UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DWANE INGALLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:07-cv-0104-DFH-TAB |
| | ) |
| THE AES CORPORATION, | ) |
| | ) |
| Defendants. | ) |

ENTRY ON MOTION FOR *COLORADO RIVER* ABSTENTION

Plaintiff Dwane Ingalls filed this diversity action against The AES Corporation, the parent company of his former employer. Around the time that AES acquired control of Indianapolis Power & Light Company, AES transferred to a position with the new acquisition. His employment was terminated in March 2004. Ingalls asserts that AES breached an oral contract and committed fraud and securities fraud against him. This federal action follows a similar lawsuit that Ingalls has pending in state court against AES and two subsidiaries and an officer of those subsidiaries. Both cases arise from the termination of Ingalls' employment. AES filed a motion to dismiss or in the alternative to stay this action based on the abstention principles stated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). As explained below, close examination of the state court lawsuit and this lawsuit shows that this case fits

squarely within the *Colorado River* abstention doctrine, and the court stays this action.

*Factual and Procedural Background*

I.   *State Court Litigation*

On July 9, 2004, Ingalls filed a suit in the Marion Superior Court, against Indianapolis Power and Light ("IPL"); IPALCO Enterprises, Inc.; The AES Corporation; and Ann D. Murtlow. He filed an amended complaint on January 25, 2005. In his amended complaint in state court, Ingalls asserts four claims against IPL, IPALCO, and AES: (1) breach of an employment contract, (2) wrongful termination and/or retaliatory discharge, (3) failure to pay all wages owed, and (4) defamation. Am. State Compl. ¶¶ 4.1-7.7. On the defamation claim, he also named Ann Murtlow as a defendant.

In his state complaint, Ingalls alleges that AES breached three employment contracts. Ingalls avers that AES breached the first implied contract "arising from the circumstances of AES offering and Ingalls accepting a transfer to IPL in the first place . . . ." Am. State Compl. ¶ 4.8. Ingalls asserts that AES knew that he wanted to remain in one location so that his children could finish school and that AES "explicitly represented that the IPL officer position could be a long-term position, with opportunities for local advancement." Am. State Compl. ¶ 3.9. Relying on these representations, Ingalls contends that he and AES entered into

an implied employment contract and that AES breached the contract by firing him without good cause.

Ingalls also alleges in the state case that AES, IPL, and IPALCO breached a second implied ten year employment contract when they fired him. In approximately late 2001 or early 2002, Ingalls learned about AES's financial difficulties.[1] AES asked all of its officers to give up their cash bonuses and some of their base salary in exchange for AES stock options that would vest in ten years. To help AES with its financial difficulties, Ingalls contends, he agreed to exchange $55,000 of his base salary and his $50,000 bonus for stock options. Am. State Compl. ¶ 3.16. Ingalls asserts that AES "implied an offer of continued employment for ten years" because the stock options would vest in ten years. Am. State Compl. ¶ 4.8.

Ingalls alleges in the state case that AES, IPL, and IPALCO breached a third implied employment contract. Ingalls asserts that the contract "arose under the stock options periodically awarded to Ingalls in 2001 through early 2004" as part of the AES Bonus and Long Term Compensation plan. Am. State Compl. ¶ 4.9.

---

[1] In his state complaint, Ingalls alleges that the meeting took place in early 2002. Am. State Compl. ¶ 4.8. In his state deposition, Ingalls states that the meeting was in late 2001. Pl. Dep. 191. In his federal complaint, Ingalls alleges that the meeting took place in October 2001. Fed. Compl. ¶ 11. AES's financial difficulties have been the subject of some other litigation in this district. See *Nelson v. IPALCO Enterprises, Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007) (ERISA claims against IPALCO and former executives arising from dramatic drop in AES stock price in latter half of 2001 and early 2002), appeal pending; *Stafford v. Bakke*, 2005 WL 1656855 (S.D. Ind. July 7, 2005) (securities fraud case).

Because the stock options did not vest for three years, Ingalls alleges that AES, IPL, and IPALCO "implied [a] three-year contractual term of employment . . . ." Am. State Compl. ¶ 4.9. Ingalls claims that AES breached a third implied employment contract by firing him.

In his state complaint, Ingalls also asserts a claim for wrongful termination or retaliatory discharge against AES, IPL, and IPALCO. While working at the IPL plant, Ingalls claims, he became concerned about IPL's and AES's business practices. Am. State Compl. ¶¶ 5.2-5.10. Ingalls reported his concerns to his superiors, and he alleges that he was fired because he reported his concerns. Ingalls claims that his termination was wrongful because it was "in retaliation for exercising a statutorily conferred right and/or for refusing to commit an unlawful act . . . ." Am. State Compl. ¶ 5.10.

In the state complaint, Ingalls asserts a third claim for failure to pay wages owed for the ten year stock options, the AES incentive plan, health care deductions, and accrued vacation time. As previously mentioned, Ingalls exchanged his $50,000 cash bonus and $55,000 of his base salary for the ten year stock options. Am. State Compl. ¶ 6.2. Ingalls asserts that AES's, IPL's, and IPALCO's "failure to pay Ingalls either his 2001 $50,000 cash bonus and/or $55,000 of his 2002 base salary amounts to a failure to pay wages" under Indiana statutes. Am. State Compl. ¶ 6.4. Ingalls also claims that AES failed to include him in the AES long term incentive program for 2002 and that he did not receive

"his full share of the 2002 stock options . . . ." Am. State Compl. ¶ 6.5. In addition, Ingalls asserts that his 2004 bonus was reduced by $2,200 to account for "a 'richer' healthcare benefits package . . . ." Am. State Compl. ¶ 6.7. Ingalls claims that he was terminated before he could receive the "full benefit of the $2,200 paid in advance." *Id.* Furthermore, Ingalls asserts that he was compensated for only four weeks of "accrued but unused vacation time for 2004" but that he had not used "approximately 18 weeks of vacation and . . . [an] unknown amount of floating holidays." Am. State Compl. ¶ 6.8.

In his fourth claim in state court, Ingalls alleges that AES, IPALCO, IPL, and Murtlow defamed him. Ingalls avers that after he was terminated, Murtlow, IPL's in-house counsel Mike Woodard, and AES attorney Dane Butswinkas[2] told third parties that Ingalls was extorting AES. Ingalls claims that these statements were false and that they damaged his "personal and professional reputations with communications tending to expose the Plaintiff to shame, contempt or disgrace, and/or to deprive the Plaintiff of his confidence and friendly intercourse in society and/or in his professional sphere." Am. State Compl. ¶ 7.4. Ingalls alleges that if the AES, IPALCO, and IPL employees made the statements in the course of their employment, each of the companies is responsible for the defamatory statements. Am. State Compl. ¶ 7.3. If Murtlow made the statements outside of the scope of her employment, Ingalls alleges, she is personally liable.

---

[2] Dane Butswinkas' name is misspelled as "Dave Butwinkus" in Ingalls' state complaint. Am. State Compl. ¶ 7.2.

On November 15, 2006, the Marion Superior Court granted AES's, IPALCO's, and IPL's motion for partial summary judgment on the issue of Ingalls' wage claims. The court concluded that the Wage Claims Statute barred Ingalls from bringing a claim for wages because he had not filed a claim with the Department of Labor and had not exhausted his administrative remedies. Pl. Br., Ex. C at 4.

II.     *Federal Court Litigation*

On January 25, 2007, Ingalls filed a diversity action in this court against AES. In this federal case, Ingalls asserts three claims: (1) breach of an oral contract, (2) fraud, and (3) state securities fraud.

In his first claim, Ingalls alleges that AES breached an "Option Offer." He claims that Dennis Bakke, AES's CEO, offered AES employees the "opportunity to acquire 10-year AES stock options using payable cash compensations . . . ." Fed. Compl. ¶ 11. Employees would be given "$1.60 in stock option value for every $1.00 in cash given by participant" and the stock options would have a "10-year expiration term." *Id.* Ingalls claims that he surrendered $105,000 in cash in exchange for "a 10-year option to purchase 16,953 shares . . . ." Fed. Compl. ¶ 13. Ingalls asserts that AES breached this oral contract "by not issuing Ingalls the agreed upon 10-year AES option to purchase 16,953 shares of AES stock at $13.19 per share." Fed. Compl. ¶ 33.

In his second claim, Ingalls asserts that AES committed fraud. Ingalls claims that "AES has made misrepresentations and or misleading omissions as part of an elaborate scheme to induce Ingalls to accept the offer by AES to sell Ingalls a 10-year AES stock option." Fed. Compl. ¶ 36. Ingalls alleges that AES made the "misrepresentations and omissions . . . recklessly or with specific intent to deceive" him. Fed. Compl. ¶ 37.

In his third claim, Ingalls alleges that AES violated the Indiana Securities Act through "breaches, misrepresentations, omissions, manipulations and concealments . . . ." Fed. Compl. ¶¶ 43, 44, 45. He contends that AES's conduct "comprise[d] a devise, scheme or artifice to defraud" him. Fed. Compl. ¶ 43. He asserts that AES's acts "constitute[d] untrue statements of material facts, omissions of material facts and were misleading . . . ." Fed. Compl. ¶ 44.

*Discussion*

AES has moved to dismiss or stay the federal case pursuant to the *Colorado River* abstention doctrine. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court taught that a federal court may abstain from exercising its jurisdiction where a parallel action is pending in a state court. *Id.* at 813-14. Although federal courts have a "virtually unflagging obligation" to exercise their statutory jurisdiction, there may be "exceptional" circumstances in which a court may abstain from exercising that jurisdiction by staying a federal action in favor of a pending parallel state court proceeding. *Id.*

at 817-18.  Under *Colorado River* abstention, a court should stay rather than dismiss a case.  *Id.* at 813.

A court conducts a two-part analysis to determine if *Colorado River* abstention is warranted.  First, the court determines if the actions in the state and federal courts are parallel.  *LaDuke v. Burlington N. R.R. Co.,* 879 F.2d 1556, 1559 (7th Cir. 1989).  If the suits are parallel, then the court applies a ten-factor test to determine if abstention is appropriate.  *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 550 (7th Cir. 1997).  In *Lumen Construction v. Brant Construction Co., Inc.,* 780 F.2d 691, 694 (7th Cir. 1985), the Seventh Circuit identified the following ten factors:

1. whether the state court has assumed jurisdiction over property
2. the inconvenience of the federal forum
3. the desirability of avoiding piecemeal litigation
4. the order in which jurisdiction was obtained by the concurrent forums
5. the source of governing law, state or federal
6. the adequacy of the state court action to protect the federal plaintiff's rights
7. the relative progress of the state and federal proceedings
8. the presence or absence of concurrent jurisdiction
9. the availability of removal
10. the vexatious or contrived nature of the federal claim

I.   *Parallel Suits*

"A suit is 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum, thus making it likely that judgment in one suit will have a res judicata effect in the other suit." *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979). This is a practical standard, not one that requires complete identity of parties and issues, or precise formal symmetry. *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988). Repackaging issues into new causes of action will not destroy the parallel nature of the actions. *Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004).

In this case, the suits are parallel. "[S]ubstantially the same parties are contemporaneously litigating substantially the same issues . . . ." *Calvert*, 600 F.2d at 1229 n.1. In his federal complaint, Ingalls alleges:

> 33. Defendant AES breached the Option Offer agreement by not issuing Ingalls the agreed upon 10-year AES option to purchase 16,953 shares of AES stock at $13.19 per share.

Fed. Compl. ¶ 33. In his state complaint, Ingalls asserts a claim for breach of an implied employment contract and alleges wrongdoing arising from the same agreement to provide the stock option:

> 4.8 [A] second implied or de facto contract arose in early 2002 when AES asked all of its officers to relinquish part of their salaries in return for AES stock options that would vest in ten years. In making this offer, AES also implied an offer of continued employment for ten years until those stock

> options vested . . . Ingalls accepted the offer and immediately gave up his cash bonus and part of his salary to obtain those 2002 AES stock options . . . In later terminating Ingalls' employment without good cause, Defendants IPL, IPALCO and/or AES, individually and/or collectively, breached the second implied employment contract with Ingalls.

Am. State Compl. ¶ 4.8. Ingalls also asserts in his state complaint a claim for failure to pay all wages owed, which also addresses the agreement to provide the stock option. In this claim, Ingalls alleges:

> 6.2 . . . In early 2002, AES asked its employees to voluntarily accept a reduced 2002 base salary and forego 2001 cash bonuses in exchange for increased AES 2002 stock options. To help out AES during its period of financial difficulties, Ingalls agreed to give up his $50,000 cash bonus and $55,000 of his base 2002 compensation in exchange for those stock options.
> 6.3 Ingalls has never received his full compensation for 2002, despite repeated demands for such.
> 6.4 The corporate Defendants' failure to pay Ingalls either his 2001 $50,000 cash bonus and/or $55,000 of his 2002 base salary amounts to a failure to pay wages . . . .

Am. State Compl. ¶¶ 6.2-6.4. The two suits thus revolve around the same transactions involving the ten year stock options. In his state case, Ingalls seeks redress for the loss of wages and/or the loss of stock options resulting from his purchase of the ten year stock options. This new federal suit attempts to address those same problems. Ingalls has simply asserted some new theories for relief claims arising from the same events that are central to his state case.

Ingalls tries to distinguish the two cases by arguing that the ten year stock options are "independent of any employment relationship between the parties." Pl. Br. at 10. This argument is contradicted by Ingalls' state complaint. He

alleges that "[h]e has also lost and is continuing to lose the ability to effectively exercise his stock options given the wrongful termination of his employment . . . ." Am. State Compl. ¶ 8.1(d). The stock options were intimately connected to his employment. This connection strengthens the parallel nature of the state and federal cases.

Ingalls also tries to distinguish the two cases by asserting that his federal case focuses on AES stock options, not on AES stock option grants. Ingalls contends that paragraph 6.3 of his state complaint refers to AES stock option grants, which are different from the ten year stock options at issue in his federal complaint. Pl. Br. at 9. In the context of the surrounding paragraphs, quoted above, it is clear that paragraph 6.3 refers to the ten year stock options at issue here, among other forms of compensation. First, paragraph 6.2 focuses on AES's financial difficulties and the agreement between AES and its employees "to voluntarily accept a reduced 2002 base salary and forego 2001 cash bonuses in exchange for increased AES 2002 stock options." Ingalls alleges in paragraph 6.3 that he "has never received his full compensation for 2002, despite repeated demands for such." Finally, paragraph 6.4 focuses on Ingalls' bonus and base salary that he exchanged for the ten year stock options. Paragraph 6.2 and 6.4 reveal that these stock options s were the options for which Ingalls exchanged his bonus and part of his base salary during AES's financial difficulties. Paragraphs 6.2 and 6.4 convince the court that paragraph 6.3 refers to the same ten year stock options at issue in his federal complaint.

Ingalls asserts that AES conceded that the two suits are not parallel. Ingalls relies on a letter from AES objecting to some of his discovery requests. In response to Ingalls' requests to depose individuals about the ten year stock options, AES wrote: "You have already had ample opportunity to depose high-level IPL officers about this offer. Additional questioning on this topic, therefore, is not warranted, particularly given your deposition testimony that any alleged illegalities with regard to these options are not part of your lawsuit." Pl. Br., Ex. F ¶ 5. AES did not concede that the options are not part of his lawsuit. AES objected to Ingalls' discovery requests because he had already had the opportunity to question IPL officers about the options and because Ingalls himself had conceded that the stock options were not part of his suit. Because AES conceded nothing, this argument does not show that the two suits are not parallel.

Ingalls also asserts that the suits are not parallel because his claim for wages is against IPL. Pl. Br. at 10. This assertion, however, is inaccurate. In his state claim, Ingalls asserts a cause of action for wages against IPL, IPALCO, and AES. The claims in the federal case still arise from the same transaction.

Ingalls further contends that the two cases are not parallel because he asks for different damages in the federal and state claims. A difference in damages does not destroy the parallel nature of suits. See *Clark*, 376 F.3d at 687. If the parallel nature of the suits could be avoided merely by altering the damages sought, "future federal plaintiffs would have an incentive to tag on redundant and

non-essential . . . remedies to create straw distinctions with an otherwise parallel state proceeding."  *Id.*

Both the federal and state cases involve substantially the same issues surrounding the ten year stock options and substantially the same parties.  These similar facts and parties establish that the suits are parallel for purposes of *Colorado River* abstention.

II.     *Ten-Factor Test*

Because the state and federal suits are parallel, the court must apply a ten-factor test to determine if abstention is appropriate.  Both the Supreme Court and the Seventh Circuit have cautioned that the factors should not be treated as a mere checklist or topics for "rote application," and the analysis must be tailored to the specific case.  See *Sverdrup Corp.*, 125 F.3d at 549-50, discussing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), and *Colorado River*.

   1.     Whether the state has assumed jurisdiction over property:  This is not a factor in this case.  The two cases do not involve a single piece of property.

   2.     The inconvenience of the federal forum:  This factor is neutral.  The state action is pending in a courthouse two blocks from this federal courthouse.

3. The desirability of avoiding piecemeal litigation: This factor weighs in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results . . . ." *Day v. Union Mines Inc.*, 862 F.2d 652, 659 (7th Cir. 1988), quoting *American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). The two lawsuits in this case involve the same course of conduct, the same plaintiff, and one common defendant. The additional defendants are two of the common defendant's subsidiaries and their officer. This factor alone, however, is not sufficient to warrant *Colorado River* abstention, for it will nearly always be present in any case where it is shown that the cases are parallel. But in view of the parallel parties and the substance of the dispute in both cases, the prospects for expensive and wasteful "piecemeal litigation" are great in this case.

4. The order in which jurisdiction was obtained by the concurrent forums: This factor weighs in favor of abstention. Ingalls' state complaint was filed in July 2004 and amended in January 2005. On November 15, 2006, the Marion Superior Court dismissed Ingalls' claim for wages. On January 25, 2007, Ingalls filed his federal suit. The close timing signals that his federal lawsuit is an effort to find a new forum for the same problem. This factor weighs in favor of abstention.

Ingalls contends that this factor weighs against abstention because "no substantive discovery" as to his federal claims has been done.[3]  Pl. Br. at 12. Ingalls' contentions, however, are not supported by the deposition he himself submits.  While it is unclear how much discovery has been done in the state case, it is clear that the parties have begun deposing witnesses and that some substantive discovery has commenced.

5.   The source of governing law, state or federal:  This factor weighs in favor of abstention.  "[A] state court's expertise in applying its own law favors a *Colorado River* stay." *Day*, 862 F.2d at 660.  In both of these cases, Ingalls asserts only claims arising under Indiana law.

6.   The adequacy of state court action to protect the federal plaintiff's rights:  This factor weighs in favor of abstention.  A state court is adequate to protect a plaintiff's rights when "the state court litigation will probably eliminate the need for any further proceedings in federal court." *Lumen Constr.*, 780 F.2d at 695.  The facts of this case would be fully addressed in the state court, which may have an issue preclusion effect.

---

[3]Both parties submitted portions of Ingalls' deposition.  AES also submitted portions of Ann Murtlow's and William Henley's depositions.  Def. Br., Exs. C & D.  In exhibits submitted by Ingalls, AES refers to five previous depositions.  Pl. Br., Ex. F at 1.

Ingalls asserts that he would "lose the opportunity to litigate in a federal forum" if the case is stayed or dismissed. Pl. Br. at 12. A case is properly stayed in federal court, not dismissed. Because the court will abstain rather than dismiss, Ingalls will have the opportunity to litigate these issues at a later date if necessary, and if the results in state court are not conclusive. He can report the status of his state court proceeding and can move for this court to modify or lift the stay if there is good reason to do so.

7.  The relative progress of state and federal proceedings: This factor weighs in favor of abstention. When Ingalls filed his complaint in federal court, the parties had been litigating the issues in state court for over two years. The parties had begun discovery and had deposed witnesses. The Marion Superior Court had also ruled on AES's, IPALCO's, and IPL's motion for partial summary judgment. This federal case has not proceeded past the initial stage of sorting out whether plaintiff's claims are viable as pleaded and whether the court should abstain in favor of state court proceedings.

8.  The presence or absence of concurrent jurisdiction: This factor weighs in favor of abstention. The Supreme Court has established that it is "permissible" for a court to defer to a state court where the courts have concurrent jurisdiction. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 n.7 (1978). Because this is a diversity action, both state and federal courts have concurrent jurisdiction.

9. The availability of removal: This factor is neutral. Because Indiana citizens are defendants in the state suit, that suit could not have been removed to federal court. See 28 U.S.C. § 1441(b).

Ingalls asserts that this factor weighs against abstention. Ingalls alleges that he is "pursuing employment opportunities outside of the State of Indiana, where the federal court sits. Thus, Plaintiff bears the risk of prejudice in Indiana state court." Pl. Br. at 13. Ingalls' contention, however, is irrelevant. The purpose of this factor is to consider whether parties could have removed their case from the state court instead of filing a new case in federal court. See *Microsoftware Computer Sys. v. Ontel Corp.,* 686 F.2d 531, 537 (7th Cir. 1982), ("any interest MCS had in a federal forum could have been satisfied by removing the one action instead of creating a second"), overruled on other grounds, *Gulf Stream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271 (1988) (abolishing the *Enelow-Ettleson* doctrine). There is also no reason to believe that Ingalls would experience any prejudice against him in state court merely because he has chosen to move recently to seek other employment.

10. The vexatious or contrived nature of the federal claim: This factor weighs in favor of abstention. As previously mentioned, Ingalls filed this new case shortly after he lost a partial summary judgment in the state court. This case appears to be an attempt to find another forum to re-litigate the same issues.

In light of all of these factors, a stay is appropriate. The two suits are parallel in nature and most of the ten factors weigh in favor of abstention. Dismissal would not be appropriate, as the Supreme Court and Seventh Circuit have warned. See *Colorado River*, 424 U.S. at 813 (dismissal is never appropriate under the doctrine of abstention); *Lumen*, 780 F.2d at 698 ("a stay, not a dismissal without prejudice, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine").

Finally, the court denies Ingalls' motion to strike AES's reply brief. Under Local Rule 7.1(b), the moving party has seven days after service of the response in which to serve and file a reply. Time is computed as provided in Fed. R. Civ. P. 6(a), which excludes intermediate Saturdays, Sundays, and legal holidays when the time allowed is less than 11 days. AES's reply was due on or before March 27, 2006 – the date it filed the reply. The court is also satisfied that the arguments and additional documents provided in the reply amounted to fair reply, rebutting or putting in context assertions that Ingalls had made in his opposition brief.

*Conclusion*

Based on the doctrine of *Colorado River* abstention, the court hereby STAYS all proceedings in this case other than (a) reports to this court on the status of the state court proceedings and (b) motions to lift or modify this stay. The court also denies Ingalls' motion to strike AES's reply. The clerk shall close the case

administratively, subject to reopening based on developments in the state court lawsuit, as stated.

So ordered.

Date: August 16, 2007

*[signature: David F. Hamilton]*

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Hiroaki Nishikawara
BARNES & THORNBURG LLP
hnishikawara@btlaw.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com

Kenneth J. Yerkes
BARNES & THORNBURG LLP
ken.yerkes@btlaw.com

DWANE INGALLS
1600 South Paddock Road
Greenwood, IN 46143